1  Alan Abrams (SBN: 75637)
   Email: aafilmlaw@aol.com
2  Charles M. Coate (SBN: 140404)
   Email: ccoate@cacllp.com
3  COSTA ABRAMS & COATE LLP
   1221 Second Street, Third Floor
4  Santa Monica, California 90401
   Tel: (310) 576-6161 Fax: (310) 576-6160
5  Attorneys for Defendants
   Josh Timonen, Maureen Norton, and
6  Upper Branch Productions, Inc.

7

**FILED**

2010 NOV -4  PM 3: 41

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

8              **UNITED STATES DISTRICT COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10  THE RICHARD DAWKINS FOUNDATION      Case No.:   **CV10  8400 - JFW (FFMx)**
    FOR REASON AND SCIENCE, a Delaware
11  Charitable Corporation, and CLINTON
    RICHARD DAWKINS (commonly known as    **NOTICE OF REMOVAL OF ACTION**;
12  RICHARD DAWKINS), an individual,      UNDER 28 U.S.C. §1441(b)
                                          (FEDERAL QUESTION)
13               Plaintiffs,

    vs.
14
    JOSH TIMONEN, an individual, MAUREEN
15  NORTON, an individual, UPPER BRANCH
    PRODUCTIONS, INC., a California
16  Corporation, and DOES 1-50,

17               Defendants.

18

19      **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

20      **PLEASE TAKE NOTICE** that Defendants hereby remove to this court the state court

21  action described below.

22      1.      On October 4, 2010, an action was commenced against Defendants in the

23  Superior Court of the State of California, County of Los Angeles, Case No. EC054190, entitled

24

                                       1

1  THE RICHARD DAWKINS FOUNDATION FOR REASON AND SCIENCE, a Delaware

2  Charitable Corporation, and CLINTON RICHARD DAWKINS (commonly known as

3  RICHARD DAWKINS), an individual, Plaintiffs, v. JOSH TIMONEN, an individual,

4  MAUREEN NORTON, an individual, UPPER BRANCH PRODUCTIONS, INC., a California

5  Corporation, and DOES 1-50, Defendants.  Attached as **Exhibit "A"** and incorporated herein by

6  reference is a true and correct copy the state court file containing all process, pleadings, and

7  orders served on Defendant UPPER BRANCH PRODUCTIONS, INC. in the state action.

8          2.      The first date upon which Defendant UPPER BRANCH PRODUCTIONS, INC.

9  received a copy of the court documents attached hereto as **Exhibit "A"** was October 7, 2010,

10  when Defendant was served with such copy from the said state court.  Attached as **Exhibit "B"**

11  and incorporated herein by reference is a true and correct copy of the summons served on this

12  Defendant.

13          3.      This action is a civil action of which this Court has original jurisdiction under 28

14  U.S.C. §1331, and is one which may be removed to this Court by Defendants pursuant to the

15  provisions of 28 U.S.C. §1441(b), in that the claims asserted in the complaint require application

16  of the 1976 Copyright Act, in particular, the work-for-hire doctrine.  T.B. Harms Co. v. Eliscu,

17  339 F.2d 823 (2d Cir. 1964) ("an action 'arises under' the Copyright Act if and only if the

18  complaint . . . asserts a claim requiring construction of the Act"); Scholastic Entm't, Inc. v. Fox

19  Entm't Group, Inc., 336 F.3d 982, 986 (9th Cir. 2003) (adopting the Second Circuit's test in T.B.

20  Harms); Topolos v. Caldeway, 698 F.2d 991, 993 (9th Cir. 1983).

21          4.      Here, Plaintiffs assert eight (8) causes of action which incorporate the following

22  factual allegations (See Ex. "A", Complaint ¶¶ 46, 50, 54, 76, and 79, incorporating ¶¶ 1-13, and

23  15-41):

24

NOTICE OF REMOVAL

1            (a)     Plaintiffs admit that Defendant TIMONEN was an independent contractor

2      (Ex. "A", Complaint ¶11);

3            (b)     Plaintiffs' asserted ownership of the copyright in and to the motion picture

4      "Growing Up in the Universe" (Ex. "A", Complaint ¶¶ 17-20), a motion picture DVD created

5      and manufactured by the Defendants and sold by the Defendants to the public through the online

6      store;

7            (c)     Plaintiffs' asserted beneficial ownership of the copyright(s) in and to all

8      merchandise created and manufactured by the Defendants and sold by the Defendants to the

9      public through the online store (See Ex. "A", Complaint ¶¶ 21-28);

10           (d)     Plaintiffs' assertion that the ownership of all copyrights are in dispute (See

11     Ex. "A", Complaint ¶¶33-34); and

12           (e)     Plaintiffs' allege a beneficial ownership of the copyright in and to the

13     footage of the *unpublished* motion picture documentary "Fire & Brimstone" as a work-made-for-

14     hire (See Ex. "A", Complaint ¶¶35-40).

15         5.     The above allegations are tantamount to claims by Plaintiffs that they have

16     exclusive rights under 17 U.S.C. §106 which have been violated by the Defendants as a result of

17     the Defendants' failure to remit monies received from the sale of these audio-visual and other

18     materials, the copyrights of which, Plaintiffs allege they own.

19         6.     Federal law expressly preempts resolution of Plaintiffs' claims.  Resolution of

20     Plaintiffs' claims requires application of the work-for-hire doctrine of the 1976 Copyright Act.

21     Under the 1976 Copyright Act, copyright ownership normally vests in the author of a work, and

22     because Plaintiffs admit that Defendant TIMONEN was an independent contractor, and not an

23     employee, the Plaintiffs would have ownership under the 1976 Copyright Act's work-for-hire

24

NOTICE OF REMOVAL

1   doctrine only if Plaintiffs could plead the existence of any written agreement agreeing that the

2   works in question were specially commissioned works for hire for Plaintiffs.  Thus, application

3   of the work-for-hire doctrine is central to the instant case and arises under the federal law

4   governing copyrights.   See JustMed, Inc. v. Byce, 600 F.3d 1118, 1124 (9th Cir. 2010)

5   ("Although a complaint may not state a Copyright Act claim on its face, federal jurisdiction may

6   be appropriate if resolution requires application of the work-for-hire doctrine of the Copyright

7   Act, which the Supreme Court examined in Community for Creative Non-Violence v. Reid, 490

8   U.S. 730 (1989)").   Additionally, the 1976 Copyright Act preempts common law and state law

9   governing *unpublished* works, e.g., the "Fire & Brimstone" documentary footage.  17 U.S.C.

10  §301; Ex. "A", Complaint ¶¶35-40.

11      7.      Plaintiffs have artfully plead around a copyright infringement claim by failing to

12  state the 1976 Copyright Act claim on its face.  Yet, Plaintiffs have inserted factual allegations in

13  each claim that require interpretation of the 1976 Copyright Act and the analysis of the work-for-

14  hire doctrine therein.

15      8.      Therefore, the instant case is removable to this Court pursuant to 28 U.S.C.

16  §1441(a).

17      9.      Removal to the United States District Court for the Central District of California,

18  Western Division, is proper because the Complaint was filed in Los Angeles County, California.

19  28 U.S.C. § 1441(a).

20      WHEREFORE, Defendant prays that the above action now pending against it in the

21  Superior Court of California, County of Los Angeles, be removed therefrom to this Court.

22  ///

23  ///

24

4

1

Dated: November 4, 2010

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Respectfully submitted,
COSTA, ABRAMS & COATE LLP

By: Charles M. Coate
Attorneys for Defendants JOSH TIMONEN,
MAUREEN NORTON, and UPPER
BRANCH PRODUTIONS, INC.

NOTICE OF REMOVAL

# Exhibit "A"

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

COURHOUSE ADDRESS:   GLENDALE SUPERIOR COURT
600 E. BROADWAY
GLENDALE, CA 91205

PLAINTIFF:

DEFENDANT:

### NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER
EC 054190

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date FEB 2 2 2011   Time: 8:30 AM   DEPT. D / E

Pursuant to California Rules of Court, rule 212, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order dismissing fictitious/unnamed defendants; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code § 68600 et seq.).

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 200 et seq.

Date: OCT 0 4 2010

_Mary Thornton House_
Judge of the Superior Court   MARY THORNTON HOUSE
SUPERVISING JUDGE

### CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the NOTICE OF CASE MANAGEMENT CONFERENCE upon each party or counsel named below:

☐   By depositing in the United States mail at the courthouse in Burbank, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☒   by personally giving the party a copy of this notice upon filing of the complaint.

Date: OCT 0 4 2010

John A. Clarke, Executive Officer / Clerk

By: _____
Deputy Clerk

CIV 132 10-03
LASC Approved

### NOTICE OF CASE MANAGEMENT CONFERENCE

CRC, rule 212
LASC Local Rules, Chapter Seven

A - 2

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | RESERVED FOR CLERK FILE STAMP |
|---|---|
| NORTH CENTRAL – GLENDALE<br>600 EAST BROADWAY<br>GLENDALE, CA 91205 | OCT – 4 2010<br>N. LE |
| **NOTICE OF ORDER TO SHOW CAUSE RE FAILURE TO COMPLY WITH TRIAL COURT DELAY REDUCTION ACT** | CASE NUMBER:<br>EC 054190 |

TO THE PLAINTIFF(S) AND/OR THEIR ATTORNEY(S) OF RECORD:

Pursuant to California Rules of Court, Rule 3.110, all complaints shall be served and a proof of service thereof shall be filed within 60 days of the date the complaint is filed, unless the defendant makes an appearance within that 60 days. Plaintiff's failure to meet this deadline may result in sanctions.

PLEASE TAKE NOTE that this matter is set for an order to show cause why the plaintiff should not be sanctioned for failure to comply with the rules described above on:

AMENDED Date: DEC 2 0 2010   1-4 11   Time: 8:30 am   Dept. D / E
Address: 600 EAST BROADWAY, GLENDALE, CA 91205

At such time and place, the Court may (1) impose such sanctions as are authorized by law, including dismissal for failure to prosecute (Code of Civil Procedure Section 583.150 and Government Code Section 68608(b)) and (2) make further appropriate orders regarding the preparation of the case for trial.

PLEASE TAKE FURTHER NOTICE that no appearance is necessary at the hearing set forth above if there is (1) a proof of service filed and/or (2) an appearance in the action (i.e. by answer, demurrer, or motion contesting jurisdiction) by each named defendant BEFORE the date set for hearing. Plaintiff's appearance is MANDATORY, however, if any named defendants remain unserved at the date set for the hearing.

Date: OCT 0 4 2010

_____
Judge of the Superior Court
MARY THORNTON HOUSE
SUPERVISING JUDGE

CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the NOTICE OF ORDER TO SHOW CAUSE RE FAILURE TO COMPLY WITH TRIAL COURT DELAY REDUCTION ACT upon each party or counsel named below:

☐ By depositing in the United States mail at the courthouse in Burbank, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☒ by personally giving the party a copy of this notice upon filing of the complaint.

|  |  |
|---|---|
|  |  |

Date: OCT 0 4 2010

John A. Clarke, Executive Officer / Clerk

By: _____, Deputy Clerk
N. LE

NOTICE OF ORDER TO SHOW CAUSE RE FAILURE TO COMPLY WITH TRIAL COURT DELAY REDUCTION ACT

A - 3

SUMMONS
*(CITACION JUDICIAL)*

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

OCT -4 2010

NORTH CEN_____y

**NOTICE TO DEFENDANT:** JOSH TIMONEN, an individual,
*(AVISO AL DEMANDADO):* MAUREEN NORTON, an individual,
UPPER BRANCH PRODUCTIONS, INC., a California
Corporation, and DOES 1-50.

RECEIVED

OCT _____ in A. CLARKE, CLERK

DEPUTY
N. LE

**YOU ARE BEING SUED BY PLAINTIFF:** THE RICHARD DAWKINS
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* FOUNDATION FOR
REASON AND SCIENCE, a Delaware Charitable
Corporation, and CLINTON RICHARD DAWKINS (commonly
known as RICHARD DAWKINS), an individual.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER: *(Número del Caso):* |
|---|---|

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court, County of Los Angeles
300 East Olive Avenue
Burbank, CA 91502

~~assigned to North Central Glendale, 600 Broadway, Glendale, CA., for all further proceedings~~

EC 05419 0

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Blaine Greenberg, Esq., CA Bar 105719          818.986.8433
3400 Red Rose Drive
Encino, CA  91436

DATE:                                          Clerk, by _____, Deputy
*(Fecha)* OCT 0 4 2010   JOHN A. CLARKE   *(Secretario)*   N. LE   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Legal
Solutions

Code of Civil Procedure §§ 412.20, 465

1 | BLAINE GREENBERG - State Bar No. 105719
3400 Red Rose Drive
2 | Encino, CA 91436
Telephone: 818.986.8433
3

Attorneys for Plaintiffs the Richard Dawkins Foundation
4 | for Reason and Science and Richard Dawkins

Case assigned to North Central Glendale, 600
5 | E. Broadway, Glendale, CA., for all further
6 | proceedings SUPERIOR COURT OF THE STATE OF CALIFORNIA

7 | FOR THE COUNTY OF LOS ANGELES (NORTH CENTRAL DISTRICT)

8

9 | THE RICHARD DAWKINS FOUNDATION FOR      CASE NO.    EC 054190
REASON AND SCIENCE, a Delaware Charitable
10 | Corporation, and CLINTON RICHARD DAWKINS   COMPLAINT FOR:
(commonly known as RICHARD DAWKINS), an
11 | individual,                             (1) BREACH OF ORAL CONTRACT;

12 |   Plaintiffs,                          (2) BREACH OF THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING;
13 |   v.
                                          (3) BREACH OF FIDUCIARY DUTY;
14 | JOSH TIMONEN, an individual, MAUREEN
NORTON, an individual, UPPER BRANCH      (4) FRAUD;
15 | PRODUCTIONS, INC., a California
Corporation, and DOES 1-50,              (5) EMBEZZLEMENT (CONVERSION);
16 |   Defendants.                         (6) DECLARATORY RELIEF; and

17 |                                       (7) IMPOSITION OF A CONSTRUCTIVE TRUST.

18

19 |   Plaintiffs allege:

20 |                              THE PARTIES

21 |   1.  Plaintiff Richard Dawkins Foundation for Reason and Science ("RDFRS" or the "US

22 | Foundation") is, and at all material times was, a private 501(c)(3) charitable corporation incor-

23 | porated in the State of Delaware.  RDFRS's stated mission "is to support scientific education,

24 | critical thinking and evidence-based understanding of the natural world in the quest to overcome

25 | religious fundamentalism, superstition, intolerance and human suffering."  At various times

26 | relevant to the facts alleged in this Complaint, the Executive Director of RDFRS has been Robin

27 | Cornwell, PhD, and its Trustees have included Richard Dawkins, DPhil, J. Anderson Thomson, Jr.,

28 | M.D., Claire Enders, Todd Stiefel and Greg Langer, Esq.

COMPLAINT

A - 5

Blaine Greenberg, Esq.
3400 Red Rose Drive · Encino, California 91436
(c) 818.986.8433 · (fax) 818.986.8433

1      2. Plaintiff Clinton Richard Dawkins (commonly known as Richard Dawkins) is, and at all

2   material times was, an individual residing in Oxford, England. Professor Dawkins is an inter-

3   nationally renowned evolutionary biologist, university professor, lecturer, award winning intel-

4   lectual and best-selling author, and perhaps the world's best known and most respected atheist.

5   Professor Dawkins is the founder of the US Foundation as well as its United Kingdom sister organi-

6   zation the Richard Dawkins Foundation for Reason and Science, Ltd. (the "UK Foundation"). The

7   UK Foundation has the same charitable, political and educational goals as the US Foundation and

8   is a "Registered Charity" in Great Britain.

9      3. Defendants Josh Timonen ("Timonen") and Maureen Norton ("Norton") are, and at all

10  material times were, individuals working and residing in the County of Los Angeles, State of

11  California.

12     4. Defendant Upper Branch Productions, Inc. ("UBP") is, and at all material times was, a

13  California Corporation with its principal place of business located in the County of Los Angeles,

14  State of California. Plaintiffs are informed and believe and therefore allege that UBP is wholly

15  owned and controlled by Defendant Timonen.

16     5. The true names and/or capacities, whether individual, corporate, associate or other-

17  wise, of defendants named herein as Does 1 through 50, inclusive, are unknown to Plaintiffs at

18  this time. Plaintiffs therefore sue these Defendants, and each of them, by such fictitious names.

19  Plaintiffs will seek leave of this Court to amend this Complaint to show their true names and

20  capacities when they have been ascertained. Plaintiffs are informed and believe and therefore

21  allege that each of these fictitiously named Defendants is legally responsible in some manner for

22  the acts and/or omissions referred to in this Complaint, and that Plaintiffs' damages were and are

23  caused by the conduct of the fictitiously named Defendants. Timonen, Norton, UBP and Does 1

24  through 50, inclusive, will be referred to collectively as "Defendants."

25     6. Plaintiffs are informed and believe and therefore allege that, at all times material

26  hereto, each of the Defendants was the employer or employee, joint venturer, partner, agent,

27  principal, and/or co-conspirator of each of the remaining Defendants, and in doing each and all

28  of the things alleged herein, was acting within the scope and purpose of his, her or its authority

1   as such employer, employee, joint venturer, partner, agent, principal and/or co-conspirator with

2   the permission, consent and ratification of each of the remaining Defendants.

3

4                    ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

5   Timonen's Contractual Relationship With RDFRS and Professor Dawkins

6        7.  In or around 2006, Timonen, who was then 24 or 25 years old, began doing work

7   "benefit[t]ing [Richard Dawkins] personally." This work included video production and website

8   design and maintenance. Over time Timonen's efforts for Professor Dawkins expanded to encom-

9   pass video production, website design and maintenance and assorted other activities for RDFRS as

10  well.

11       8.  According to Timonen's own records and written admissions, Richard Dawkins paid him

12  the following sums for his personal services: $20,000 in November 2006, $20,000 in May 2007,

13  $20,000 in February 2008 and $25,000 in January 2009. Richard Dawkins also paid Timonen an

14  additional $25,000 in early 2010 to cover all of Timonen's services to be provided to Professor

15  Dawkins personally for all of calendar year 2010. In total, Richard Dawkins has paid Timonen

16  $130,000 for personal services.

17       9.  According to Timonen's own records and written admissions, RDFRS has paid him the

18  following sums for his personal services: $5,000 per month from February 2008 through October

19  2009 (a total of $105,000) and $2,885 every 2 weeks - an annualized rate of $75,000 - from

20  November 2009 through May 2010 (a total of $43,750). In all, RDFRS paid Timonen $148,750 for

21  slightly more than two years of work.

22       10.  Altogether, Timonen received $278,750 of compensation directly from Richard Daw-

23  kins and RDFRS over approximately 3.5 years (an average of nearly $80,000 per year). Plaintiffs

24  are informed and believe and therefore allege that this rate of annual compensation was exceed-

25  ingly generous and well above-market for someone of Timonen's age and experience, particularly

26  for someone providing the bulk of his efforts to a charitable organization.

27       11.  Plaintiffs and Timonen agreed at all times that Timonen was acting as an independent

28  contractor for them and would be personally responsible for covering his own health insurance

1  needs and state and federal taxes.  He was, at all times, provided Form 1099's and otherwise

2  properly treated as an independent contractor.

3      12.  Timonen represented to Plaintiffs that, as of 2007 at the latest, he was providing vir-

4  tually all of his work efforts to the projects they were paying him to accomplish.  RDFRS paid

5  Timonen for his services on a regular schedule (monthly at first and every two weeks later on).

6  Richard Dawkins paid Timonen for his services, in advance, through periodic advances of substan-

7  tial lump sums to cover extended periods of time.  As alleged above, the $25,000 lump sum

8  payment Professor Dawkins made to Timonen in early 2010 was for services Timonen was to

9  render throughout the entire calendar year.

10      13.  On or about May 22, 2010, Timonen notified Plaintiffs he was ceasing all work for

11  them.

12      14.  Despite repeated oral and written demands, Timonen has failed and refused to repay

13  to Richard Dawkins the unearned (7/12ths) portion of the $25,000 lump sum payment Professor

14  Dawkins paid him for work throughout 2010.  Consequently, Timonen presently owes Richard Daw-

15  kins $14,583.33.

16  **Norton's Relationship to Timonen and RDFRS**

17      15.  Plaintiffs are informed and believe and therefore allege that Defendants Norton and

18  Timonen are cohabiting and have been, at all material times, romantically involved with one

19  another.  Norton is significantly older than Timonen and has young adult children.

20      16.  Norton is a "post-production supervisor" and has worked in that capacity consistently

21  since at least 1997.  Norton has never been in contractual privity with Plaintiffs and Plaintiffs

22  have never hired her to do any work on their behalf or account.  Norton has, nonetheless,

23  assisted Timonen in some of his responsibilities to RDFRS, purportedly as a "volunteer."  She also

24  volunteered to assist with the Menlo Park, California fund-raising event discussed below.

25  **"Growing Up In The Universe"**

26      17.  The Royal Institution Christmas Lectures for Children were founded by Michael

27  Faraday in 1825.  (Michael Farady was a famous English chemist and physicist, perhaps best

28  remembered as the inventor of the electric motor.)  In 1991, Richard Dawkins was honored to be

1   invited to deliver The Royal Institution Christmas Lectures for Children.  His series of five one-

2   hour lectures "on life, the universe, and our place in it" were filmed and first broadcast by the

3   BBC in that year (the "Dawkins Lectures").  The BBC called the Dawkins Lectures "Growing Up in

4   the Universe."

5       18.  In 2006, Richard Dawkins, in conjunction with the British Humanist Association,

6   decided to introduce "Growing Up in the Universe" to British school children and others who had

7   not had the opportunity to see the Dawkins Lectures 15 years earlier.  Richard Dawkins and the

8   UK Foundation donated funds to produce a written curriculum to accompany a DVD of the

9   Dawkins Lectures.  In addition, in July 2006, Richard Dawkins personally paid to acquire the

10   copyrights to all five Dawkins Lectures from the copyright holder.

11       19.  In March 2007, Richard Dawkins paid for the preparation of artwork and packaging as

12   well as the manufacturing of 6,000 2-DVD packages of "Growing Up in the Universe."  Richard

13   Dawkins contributed his copyrights in the Dawkins Lectures and all the "Growing Up in the

14   Universe" product, artwork and packaging he had paid for to RDFRS, with the express intent of

15   devoting the profits from the DVD sales to the continued benefit and operation of the US Founda-

16   tion.  Hyperlinks to the British company selling "Growing Up in the Universe" DVDs (Burning

17   Shed/Noisebox) were placed on the websites for the US Foundation and the UK Foundation.

18       20.  Timonen designed these websites for the US and UK Foundations and both websites

19   were replete with representations – first posted online on April 1, 2007 – assuring the public that

20   purchasers of "Growing Up in the Universe" would be benefitting RDFRS.  These statements,

21   authored by Timonen, included "BUY THE DVD NOW (All proceeds go to RDF)," "BUY THE DVD

22   through our online store (All proceeds go to RDF)" and "All proceeds from the sale of this DVD are

23   donated to The Richard Dawkins Foundation for Reason and Science."

24   The Creation and Operation of "The Store"

25       21.  In 2007, RDFRS and Timonen agreed it would be a good idea to create an online store

26   ("The Store") to help market the "Growing Up in the Universe" DVDs, T-shirts, caps, mugs, pins

27   and other merchandise related to RDFRS' mission and charitable goals.

28       22.  At the time, RDFRS' Trustees believed that legal requirements (particularly controls

1  imposed on Richard Dawkins and the UK Foundation by the British Charities Commission) made it

2  legally impermissible for The Store to be operated by RDFRS.  This information was shared with

3  Timonen and he agreed to use his personal corporation UBP to operate The Store for RDFRS'

4  benefit.

5      23.  Plaintiffs and Timonen agreed that (i) Plaintiffs would fund the creation and opera-

6  tion of The Store (primarily with seed money generated by the sale of "Growing Up in the

7  Universe" DVDs), (ii) The Store would operate as a component of RDFRS' website (from a virtual,

8  online perspective), (iii) all proceeds from the operation of The Store belonged to RDFRS and

9  would be remitted by UBP to RDFRS when earned, (iv) UBP would be operated honestly and

10  appropriately according to generally accepted accounting principles and applicable Federal and

11  State laws, (v) Timonen was already being adequately compensated and would not receive addi-

12  tional compensation for operating The Store or developing any of the merchandise or marketing

13  materials it used and (vi) any copyrights, trademarks, logos or other intellectual property devel-

14  oped for The Store and any inventory of Store merchandise would belong to RDFRS.

15      24.  Plaintiffs are informed and believe and therefore allege that 100% of the assets and

16  income of UBP from 2007 through May 2010 came from the sale of merchandise beneficially

17  owned by RDFRS.

18      25.  During UBP's operation of The Store, Defendants repeatedly represented to Plaintiffs

19  that Norton was spending a great deal of uncompensated time on Store business to benefit

20  RDFRS.  Defendants further represented that Norton was suffering financially because she could

21  not devote full-time efforts to her work as a post-production supervisor in the film industry.

22  Indeed, the Trustees of RDFRS were so impressed with Norton's supposed "volunteer" efforts and

23  so sympathetic to her purported fiscal plight that they authorized a payment to her of $10,000 as

24  thanks for her efforts in connection with an RDFRS fund-raising event held in Menlo Park, Califor-

25  nia in 2009.

26      26.  Both before and after the incorporation of UBS, Plaintiffs provided money and/or

27  credit to Defendants for equipment, services, rent and other items needed to help (i) Defendants

28  operate The Store and (ii) Timonen perform his contractual services to Professor Dawkins and

1   RDFRS.

2        27. UBP made a single $30,000 "donation" of "profit" from The Store to RDFRS in January

3   2008. With that one exception, Defendants have not contributed anything from UBP's operation

4   of The Store to Plaintiffs. Moreover, Defendants repeatedly represented to RDFRS' Trustees and

5   its Executive Director that The Store was barely self-supporting or, later on, finally just starting

6   to operate at a small profit.

7        28. During all the years Defendants operated The Store through UBP, they never provided

8   Plaintiffs financial records, general ledgers, revenue statements, profit and loss statements or

9   any other accounting of the activities they were engaged in for the supposed benefit of RDFRS.

10  Defendants knowingly concealed from Plaintiffs the fact that The Store was actually generating

11  hundreds of thousands of dollars in revenue, most of which Defendants were misappropriating for

12  themselves and Norton's family members. In fact, Timonen authored express representations he

13  caused to be included on the websites for the US and UK Foundations which hosted The Store

14  including this one: "Purchases directly from the Store or via Amazon links found on this website

15  directly benefit the Richard Dawkins [F]oundation and [sic] we appreciate your ongoing support."

16  Plaintiffs' Discovery of Defendants' Fraudulent and Criminal Conduct

17       29. By early Summer, 2010, the legal impediments that had prevented RDFRS from

18  operating The Store itself were eliminated and the Executive Director and Trustees decided to

19  transfer The Store's operations from UBP to RDFRS. In connection with this decision, RDFRS had a

20  number of meetings with Timonen and Norton and requested access to the financial books and

21  records of UBP. Norton and Timonen complied with this request, at least in part, and delivered

22  QuickBooks files for UBP to Dr. Cornwell in or about June 2010.

23       30. Plaintiffs' review of the financial records Defendants provided resulted in their

24  discovery of a plethora of shocking financial improprieties Defendants had perpetrated over the

25  years. For example:

26            a.    Defendants charged tens of thousands of dollars of unnecessary and

27                  unauthorized expenses against the proceeds from the Store (which belonged

28                  to RDFRS). These included a $201.50 charge at Whole Foods in Las Vegas,

1   $248.95 at Katsuya in Hollywood, $498.97 for a meal at Michael Mina's XIV

2   in Hollywood, $202.15 at L'Atelier de Joel at the MGM Grand hotel, charges

3   at an Arizona shoe store, bills from Timberline Lodge in Oregon and the

4   Malibu Beach Inn, as well as a weight reduction program (or weight loss

5   meals) purchased from Freshology, Inc.

6   b.   Defendants used $27,826.50 of RDFRS's money to pay for health insurance

7   from Blue Cross/Blue Shield. As alleged above, it was always Timonen's

8   obligation to provide his own health insurance and Plaintiffs never agreed

9   to fund health insurance for Norton or anyone else from the revenues

10   generated by The Store.

11   c.   Defendants used RDFRS's money (generated by The Store) to pay "salaries"

12   of at least $43,000 to Timonen and $168,509.08 to Norton - including an

13   astonishing $73,941.18 in 2009 alone.

14   d.   Defendants paid another $103,000 to "CSL" (much of it denominated

15   "officer salaries" or "wages" in UBP's QuickBooks records). Plaintiffs are

16   informed and believe and therefore allege that Timonen and Norton either

17   received these "CSL" funds directly, or personally benefitted from them.

18   e.   Defendants paid an additional $29,045 to Graham Norton (Maureen Norton's

19   teenage son), $300 to "Michelle Norton," $350 to "Brittany Norton,"

20   $1,102.75 to Ohana Farms (a business Plaintiffs believe to be owned by

21   Maureen Norton's parents) and $64.90 to "Pondbiz."

22   31.  In summary, over approximately 3.5 years of operating The Store, Defendants con-

23   sumed or expended at least $375,000 of the profits generated to personally benefit themselves

24   and their relatives. Meanwhile, they "contributed" only $30,000 from The Store's net receipts to

25   RDFRS. Put another way, Defendants kept at least 92% of the positive cash flow generated by

26   The Store themselves and paid less than 8% to RDFRS.

27   32.  If RDFRS' Executive Director and Trustees had known that Defendants were pillaging

28   The Store to the tune of more than $100,000 a year on average, while representing it was just

COMPLAINT                                                                    8

A - 12

1   squeaking by, they would have terminated Defendants' authority to run The Store on behalf of

2   RDFRS immediately.  Moreover, as fiduciaries of a tax exempt charitable enterprise, the Execu-

3   tive Director and Trustees would never have permitted any individual or entity to consume such a

4   massive portion of The Store's net receipts.

5   **Defendant Timonen's (Disputed) Claims To Ownership of RDFRS's Intellectual Property**

6       33. On July 15, 2010, Defendants' lawyer, Alan Abrams, Esq., sent an email to Plaintiffs'

7   litigation counsel suggesting that "the RDF website (which . . . was created by Mr. Timonen) . . .,

8   merchandise using the RDF logo created by Mr. Timonen, and audio-visual and musical materials

9   created and produced by Mr. Timonen" are all "Mr. Timonen's intellectual property rights" which

10  have not been transferred or assigned to RDFRS or Professor Dawkins.

11      34. In fact, all "intellectual property" Defendant Timonen created for Plaintiffs at all

12  times and for any purpose is a "work for hire" commissioned and paid for by Plaintiffs.  Conse-

13  quently, any copyrights, trademarks or other intellectual property rights pertaining to logos,

14  merchandise, "audio-visual or musical materials created and produced by Mr. Timonen" for The

15  Store, RDFRS or Richard Dawkins belong to Plaintiffs.

16  **The Nate Phelps "Fire + Brimstone" Documentary**

17      35. Defendants Norton and Timonen approached Plaintiffs repeatedly in 2009 and early

18  2010 to seek funding for a full-length feature documentary they wanted to make about the

19  experiences of a man named Nate Phelps.  Defendants "pitched" their idea this way: "Nate

20  Phelps, estranged son of 'God Hates Fags' Pastor Fred Phelps, travels to his hometown of Topeka,

21  Kansas to tell his story of religious abuse, how he survived, and his mission to fix the laws that

22  protect the perpetrators."  The working title of their film was "Fire + Brimstone" and they sought

23  financing from RDFRS of $182,976 for its production.

24      36. While Plaintiffs were still considering whether or not to finance or invest in "Fire +

25  Brimstone," in or about March and April 2010, Norton and Timonen advised Defendants that a

26  crucial event was fast approaching in Topeka, Kansas involving Nate Phelps and that they des-

27  perately needed $15,000 for travel, venue and other expenses in order to capture film footage

28  integral to their film (the "Brimstone Footage").

37. RDFRS agreed to finance Defendants' $15,000 budget to obtain the Brimstone Foot-age, with the understanding that any decisions about financing or investing in the remainder of their budget for the film would be deferred. RDFRS did provide Defendants with the $15,000 and Defendants did record the Brimstone Footage.

38. Unfortunately, Defendants ran significantly over budget while shooting the Brimstone Footage and they attempted to get RDFRS to cover their cost overruns. Defendant Norton also entered commitments to pay an additional $15,000 (approximately) to retain a law firm for production legal services and purchase an errors and omissions insurance policy, all without Plaintiffs' permission or authority.

39. On June 6, 2010, Timonen sent an email to Richard Dawkins, Elisabeth Cornwell and RDFRS' Trustees acknowledging the obligation to refund RDFRS's "initial investment" in Fire + Brimstone. Nonetheless, Defendants have failed to repay RDFRS for the costs of producing the Brimstone Footage, they have refused to deliver the Brimstone Footage to RDFRS and they purport to own and control that footage and claim they can use it as they see fit.

40. Plaintiffs allege the Brimstone Footage is a "work for hire" authorized and paid for by RDFRS. Consequently, any copyrights, trademarks or other intellectual property rights in or to the Brimstone Footage belong to RDFRS.

**Defendants' Use Of Funds Embezzled From Plaintiffs**

41. Plaintiffs are informed and believe and therefore allege that Defendants invested tens of thousands of dollars (and possibly more than $100,000) of the funds they embezzled from Plaintiffs on improvements to the residence Norton owns at 4532 Mary Ellen Avenue, Sherman Oaks, CA 91423, legally described as Parcel # 2360028027, Tract No. 10117, Lot 172 (the "Mary Ellen House"). A recent real estate listing for this property describes some of the improvements Defendants paid for with funds embezzled from Plaintiffs as a "custom backyard pool and spa area with a wonderful waterfall and glass block fire pit plus custom seating for the ultimate outdoor living and entertaining experience."

///

///

1

FIRST CAUSE OF ACTION

2

(For Breach of Oral Contract - by Richard Dawkins Against Timonen)

3    42. Plaintiff Richard Dawkins incorporates by reference paragraphs 1 through 14, inclu-

4  sive, of this Complaint.

5    43. Defendant Timonen breached his oral contract with Richard Dawkins as alleged above.

6    44. Professor Dawkins has performed each and every covenant, condition and obligation

7  to be performed by him under the contract, except to the extent excused, waived or made im-

8  possible by Timonen's conduct.

9    45. As a direct and proximate result of Timonen's breaches of the contract alleged above,

10  Plaintiff Richard Dawkins has been and will be damaged in an amount not yet ascertained, but

11  which he is informed and believes and therefore alleges equals at least $14,583.33, plus interest

12  at the legal rate commencing on June 1, 2010.

13

14

SECOND CAUSE OF ACTION

15

(For Breach of Oral Contract - by RDFRS Against All Defendants Except Norton)

16    46. Plaintiff RDFRS incorporates by reference paragraphs 1 through 13 and 15 through 41,

17  inclusive, of this Complaint.

18    47. Defendants breached their substantially performed oral contract with RDFRS as

19  alleged above.

20    48. RDFRS has performed each and every covenant, condition and obligation to be

21  performed by it under the contract, except to the extent excused, waived or made impossible by

22  Defendants' conduct.

23    49. As a direct and proximate result of Defendants' breaches of the contract alleged

24  above, Plaintiff RDFRS has been and will be damaged in an amount not yet ascertained, but which

25  it is informed and believes and therefore alleges exceeds $375,000.

26

27  ///

28  ///

COMPLAINT                              11

THIRD CAUSE OF ACTION

(For Breach of the Implied Covenant of Good Faith And Fair Dealing -

by RDFRS Against All Defendants Except Norton)

50.  Plaintiffs incorporate by reference paragraphs 1 through 13 and 15 through 41, inclusive, of this Complaint.

51.  The oral contract between Plaintiffs and Defendants concerning Defendants' operation of The Store contained an implied covenant of good faith and fair dealing by and between the parties which prohibits them from engaging in any activity or conduct which would prevent the other party from receiving the benefits of the contract.

52.  Plaintiffs have fully performed all covenants, conditions and obligations required by them to be performed by reason of the contract, except to the extent waived, excused or made impossible by Defendants' breach of the contract.

53.  Defendants, in acting or failing to act as alleged above, breached the implied covenant of good faith and fair dealing.  As a direct and proximate result of their breach of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount not yet ascertained, but which Plaintiffs are informed and believe and therefore allege exceeds $375,000.

FOURTH CAUSE OF ACTION

(For Breach of Fiduciary Duty – Against All Defendants)

54.  Plaintiffs incorporate by reference paragraphs 1 through 13 and 15 through 41, inclusive, of this Complaint.

55.  By agreeing, or voluntarily undertaking, to operate The Store for the beneficial interest of RDFRS, by marketing merchandise and intellectual property belonging to RDFRS, and by collecting and holding hundreds of thousands of dollars beneficially owned by RDFRS, Defendants owed RDFRS a fiduciary duty of loyalty and fidelity.

56.  Defendants breached their fiduciary duty to Plaintiffs as alleged above.

57.  Plaintiffs have performed each and every covenant, condition and obligation to be

1   gard of Plaintiffs' rights with the intent to cause them cruel and unjust hardships.  Defendants,

2   and each of them, acted in a despicable manner, intending to vex, injure and annoy Plaintiffs

3   while enriching themselves, and have been guilty of oppression, fraud and malice, thus warrant-

4   ing an award of punitive damages, in an amount according to proof at trial.

5

6   SEVENTH CAUSE OF ACTION

7   (For Declaratory Relief - Against All Defendants)

8       76.  Plaintiffs incorporate by reference paragraphs 1 through 13, 15 through 41, 60

9   through 66 and 68 through 75, inclusive, of this Complaint.

10       77.  An actual controversy has arisen and now exists between Plaintiffs and Defendants.

11   Plaintiffs contend all of the intellectual property, logos, trademarks, copyrights, merchandise,

12   music and audio-visual materials Defendants created for RDFRS, Richard Dawkins, any of their

13   websites and The Store were "works made for hire" that belong to Plaintiffs.  Plaintiffs further

14   contend all rights in and to the Brimstone Footage belong to RDFRS unless or until Defendants

15   fully reimburse them for their investment in that project.  Plaintiffs believe Defendants contend

16   to the contrary and aver that all these tangible and inchoate property rights (the "Contested

17   Rights") belong to them.

18       78.  A declaratory judgment is necessary to immediately resolve this dispute to clarify the

19   rights, titles and interests of the parties to the Contested Rights which are integral to Plaintiffs'

20   ongoing charitable and for-profit activities and have the potential of causing significant, irrepara-

21   ble harm to their reputations and long-established goodwill throughout the world.

22

23   EIGHTH CAUSE OF ACTION

24   (For Imposition of a Constructive Trust - Against All Defendants)

25       79.  Plaintiffs incorporate by reference paragraphs 1 through 13, 15 through 41, 60

26   through 66 and 68 through 75, inclusive, of this Complaint.

27       80.  At all times material hereto, Plaintiffs were the beneficial owners of the net proceeds

28   from the operation of The Store, and had the right to receive those net proceeds without set-off

COMPLAINT               16

A - 17

1    or deduction(the "Purloined Proceeds").

2        81. Defendants have converted the Purloined Proceeds to their own use by wrongfully

3    taking, retaining and/or disposing of them.  Plaintiffs are further informed and believe and

4    therefore allege that a portion of the Purloined Proceeds Defendants embezzled has been invest-

5    ed in improvements to the Mary Ellen House.

6        82. Plaintiffs have demanded Defendants return the Purloined Proceeds they have unlaw-

7    fully converted.  Defendants have failed and refused to do so.

8        83. As a direct and proximate result of the fraud, embezzlement, larceny and conversion

9    alleged above, Defendants have no legal or equitable right, claim or interest in or to the

10    Purloined Proceeds.  Instead, Defendants, jointly and severally, are involuntary trustees holding

11    the Purloined Proceeds and any profits or proceeds derived from them (including, without limita-

12    tion, the Mary Ellen House) in constructive trust for Plaintiffs, with the duty to convey them to

13    Plaintiffs immediately.

14

15        WHEREFORE, Plaintiffs pray for judgment as follows:

16                   ON ALL CAUSES OF ACTION

17       1. For costs of suit; and

18       2. For such other, further or different relief as the Court may deem proper.

19               ON THE FIRST CAUSE OF ACTION

20       3. For general and actual damages in excess of $14,583.33, plus interest at the legal rate

21    commencing on June 1, 2010, according to proof.

22         ON THE SECOND THROUGH FOURTH CAUSES OF ACTION

23       4. For general and actual damages in excess of $375,000, according to proof.

24          ON THE FIFTH AND SIXTH CAUSES OF ACTION

25       5. For general and actual damages in excess of $500,000, according to proof; and

26       6. For exemplary damages, according to proof.

27    ///

28    ///

ON THE SEVENTH CAUSE OF ACTION

7. For a judgment declaring all the Contested Rights belong to Plaintiffs and invalidating any purported or recorded claim of Defendants in or to the Contested Rights.

ON THE EIGHTH CAUSE OF ACTION

8. For a judgment declaring Defendants, jointly and severally, hold the Purloined Proceeds and any profits or proceeds derived from them (including, without limitation, the Mary Ellen House) as constructive trustees for Plaintiffs' benefit.

DATE: October 1, 2010

By: _____
Blaine Greenberg
Attorney for Plaintiffs
The Richard Dawkins Foundation for Reason
and Science and Richard Dawkins

Exhibit "B"

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

NOTICE TO DEFENDANT: JOSH TIMONEN, an individual,
(AVISO AL DEMANDADO): MAUREEN NORTON, an individual,
UPPER BRANCH PRODUCTIONS, INC., a California
Corporation, and DOES 1-50.

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
ORIGINAL FILED

OCT -4 2010

LOS ANGELES
SUPERIOR COURT

YOU ARE BEING SUED BY PLAINTIFF: THE RICHARD DAWKINS
(LO ESTÁ DEMANDANDO EL DEMANDANTE): FOUNDATION FOR
REASON AND SCIENCE, a Delaware Charitable
Corporation, and CLINTON RICHARD DAWKINS (commonly
known as RICHARD DAWKINS), an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: (El nombre y dirección de la corte es) assigned to North Central Glendale, 600 Superior Court, County of Los Angeles East Olive Avenue, Glendale, CA, for all further 300 East Olive Avenue, Burbank, CA 91502 proceedings. | CASE NUMBER: (Número del Caso): EC 054190 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Blaine Greenberg, Esq., CA Bar 105719       818.986.8433

3400 Red Rose Drive
Encino, CA  91436

DATE: OCT 04 2010       JOHN A. CLARKE       Clerk, by _____, Deputy
(Fecha)                         (Secretario)       N. LB       (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [ ] on behalf of (specify):

   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [X] by personal delivery on (date): 10/7/2010

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

Legal
Solutions
Plus

B - 2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV10- 8400 JFW (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
THE RICHARD DAWKINS FOUNDATION FOR REASON AND SCIENCE, a Delaware Charitable Corporation, and CLINTON RICHARD DAWKINS (commonly known as RICHARD DAWKINS), an individual

**DEFENDANTS**
JOSH TIMONEN, an individual, MAUREEN NORTON, an individual, UPPER BRANCH PRODUCTIONS, INC., a California Corporation, and DOES 1-50

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Blaine Greenberg, Esq. (SBN: 105719), 3400 Red Rose Drive, Encino, California 91436; Telephone (818) 986-8433

**Attorneys** (If Known)
Alan Abrams (SBN: 75637), Charles M. Coate (SBN: 140404), COSTA, ABRAMS & COATE, 1221 2nd Street, Third Floor, Santa Monica, California 90401; Telephone (310) 576-6161

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** 889,583.33 plus

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1331; 28 U.S.C. 1441(b) - Resolution of Plaintiffs' claims require application of the work-for-hire doctrine of the 1976 Copyright Act.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   CV10 8400

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                     CIVIL COVER SHEET                     Page 1 of 2

CONFIRMATION COPY

UNITED STATE          STRICT COURT, CENTRAL DISTRICT O          LIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | THE RICHARD DAWKINS FOUNDATION - Delaware Corporation<br>CLINTON RICHARD DAWKINS - United Kingdom |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| JOSH TIMONEN - Los Angeles<br>MAUREEN NORTON - Los Angeles<br>UPPER BRANCH PRODUCTIONS - Los Angeles |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date   11/4/10

   Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
   or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
   but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |